IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, an Illinois Company, | CV 20-64-BLG-TJC |
| Plaintiff, | **ORDER** |
| vs. | |
| RAYMOND HANSEN, an individual, LOLA HANSEN, an individual, and JASON KLEIN, as Personal Representative of THE ESTATE OF TERRY KLEIN, SR., | |
| Defendants. | |

Plaintiff State Farm Fire and Casualty Company ("State Farm") filed this action against Defendants Raymond Hanson ("Hanson"), Lola Hansen ("Lola") and Jason Klein, as Personal Representative of the Estate of Terry Klein, Sr. ("Klein") seeking declaratory judgment as to its duty to defend and indemnify Raymond and Lola Hansen under a Renters Policy in relation to an underlying state court action brought by Klein.[1]  (Doc. 1.)

---

[1] State Farm dismissed all claims against Lola Hansen on August 7, 2020.  (Doc. 8.)  The parties have also jointly stipulated to the dismissal of all claims against Defendants regarding a Homeowners Policy issued to Arnold and Lola Hansen. (Doc. 59.)

Presently before the Court are Hansen's Motion for Summary Judgment on Duty to Defend (Doc. 28), State Farm's Motion for Summary Judgment (Doc. 31), and State Farm's Motion in Limine to Exclude Expert Testimony (Doc. 39).  The motions are fully briefed and ripe for the Court's review.

## I.    BACKGROUND

On August 23, 2016, Raymond shot and killed Terry Klein, Sr. in Richland County, Montana.  Thereafter, Raymond and his mother, Lola, were named as defendants in a lawsuit entitled *Jason Klein, as Personal Representative of the Estate of Terry Klein, Sr. v. Raymond Hansen, et al.*, Montana Seventh Judicial District Court, Richland County, Cause No. DV-18-32 (the "Underlying Action"). (Doc. 1-1.)

The Underlying Complaint alleges in relevant part:

3.      Pursuant to his conviction in Case Number CR-07-69-BLG-JDS, Defendant Raymond Hansen was permanently subject to the following Special Conditions of Supervision:

The defendant shall be prohibited from owning, using, or being in constructive possession of firearms, ammunition, or other destructive devices while on supervision and any time after the completion of the period of supervision unless granted relief by the Secretary of Treasury.

. . .

4.      Following February 27, 2008, Defendant Raymond Hansen was fully aware he was prohibited from owning, using, or being in constructive possession of firearms, ammunition, or other destructive devices.

2

. . .

7.     On or around August 24, 2016, in direct violation of the foregoing Special Condition of Supervision, Defendant Raymond Hansen took possession of a firearm(s), ammunition, and/or other destructive device(s).

8.     On August 24, 2016, Defendant Raymond Hansen did, without provocation, license, or defense, shoot and kill Terry Klein, Sr., in Richland County, State of Montana.

. . .

13.     On August 24, 2016, contrary to the standard of care imposed upon citizens of the state of Montana, Defendant Raymond Hansen did, without provocation, license, or defense, shoot and kill Terry Klein, Sr., in Richland County, State of Montana.

14.     Terry Klein, Sr., the heirs, and The Estate of Terry Klein, Sr., suffered damages in the form of emotional distress, lost wages, lost companionship, lost comfort and care, and are, therefore, entitled to damages in an amount to be determined by the jury.

(Doc. 30-1 at 3-4.)

On September 6, 2016, Hansen was charged with Deliberate Homicide in violation of Mont. Code Ann. § 45-5-102, in *State of Montana v. Raymond Hansen*, Cause No. DC 16-99, Montana Seventh Judicial District Court, Richland County (the "Criminal Case").  (Doc. 30-1 at 16-26.)  Under Montana law, deliberate homicide requires that a person "purposely or knowingly cause[] the death of another human being."  Mont. Code Ann. § 45-5-102.

In October 2016, Hansen's defense attorney in the Criminal Case obtained a mental health assessment of Hansen from Dr. William Dee Woolston.  (Doc. 37-5

at 6-12.)  Dr. Woolston stated that although Hanson had "been abstinent from methamphetamine and opiates for about ten weeks . . . he continues to exhibit paranoid and grandiose delusions that are indistinguishable from those expressed in patients with Schizophrenia, Bipolar Disorder I, and Schizoaffective Disorder." (*Id.* at 11.)  Dr. Woolston opined:

> [Hansen's] judgment regarding the current legal proceedings is completely contaminated by his delusional beliefs.  I do not believe he will be able to provide his attorney with reliable information about the events that led to his arrest or that he will be able to rationally evaluate legal advice that is given to him.  Fortunately, it is likely that a course of expert psychiatric care including treatment with antipsychotic and/or mood stabilizing medications could very well restore him to fitness. I would, therefore, recommend that he be ordered to obtain evaluation and treatment in the Montana State Hospital in Warm Springs, Montana.

(*Id.*)

After receiving Dr. Woolston's opinion, Hansen's defense attorney filed a motion raising the issue of fitness to proceed, and requested that additional evaluation be performed by the State Hospital.  (Doc. 47-3 at 1-2.)  On November 4, 2016, the state court ordered Hansen committed to the State Hospital for a period of 60 days for a psychological evaluation to assess his fitness to proceed in the Criminal Case.  (*Id.* at 1-2.)

On November 21, 2026, Hansen's defense attorney filed a Notice pursuant to Mont. Code Ann. § 46-14-102, indicating Hansen's intent to use as a defense that he was suffering from a mental disease or defect at the time of the commission

4

of the offense, and did not have a state of mind that is an element of the offense. (*Id.* at 1-2.)

On February 7, 2017, the Montana State Hospital issued a written report on Hansen's mental state. (Doc. 37-6.) The State Hospital determined Hansen's "diagnoses are Methamphetamine Induced Psychotic Disorder, with Onset During Intoxication; Stimulant Use Disorder; Alcohol Use Disorder, Cannabis Use Disorder, and Opioid Use Disorder." (*Id.* at 11.) His diagnoses did not meet the legal standard for mental disorder under § 53-12-102(9)(a), or mental disease under § 46-14-101(2)(a). (*Id.*) The Montana State Hospital determined that Hansen demonstrated "an adequate factual and rational understanding of the charge against him," that he had "the capacity to assist his legal counsel in the preparation of his defense," and therefore, he was deemed "fit to proceed with his criminal charges." (*Id.*) The State Hospital further concluded:

> With equal certainty, we also believe that at the time of [the] crime he had the capacity to act with knowledge and purpose. At the time of the crime, Mr. Hansen is believed to have been suffering from a substance-induced psychotic disorder that has since cleared. Based on witness statements, his capacity to have acted with knowledge or purpose at the time of the crime was intact. He was aware of his identity, was able to navigate a vehicle to a remote construction site, and asked workers at the site about job opportunities. In our opinion, at the time of [the] crime Mr. Hansen had the capacity to have a particular state of mind that is an element of the offense charged.
>
> His capacity to appreciate the criminality of his conduct or to conform his conduct to the requirement of the law at the time of the crime appears to have been impaired by the deleterious effects of substance

5

abuse, including ongoing use of alcohol, marijuana, and methamphetamine. . . . Following months of sobriety and without medication intervention, Mr. Hansen's psychotic symptoms have remitted.

(*Id.*)

On July 7, 2017, Hansen's defense attorney filed a Motion in Limine regarding the admissibility of expert testimony that Hansen suffered from a mental disease or defect at the time of the crime.  (Doc. 37-7.)

But the following week, on July 12, 2017, the Deputy County Attorney and Hansen submitted a Plea and Sentence Recommendation Agreement to the Court. (Doc. 37-8.)  The Plea Agreement contained the following recommendation:

> A.    **Statement of Events.**  The State's obligation to recommend a sentence in accordance with Paragraph 2(B) hereunder is contingent upon the Defendant making a statement during his change of plea of his actions, his words, the events, and what happened between himself and Terry Klein during the moments from the Defendant's approach to the excavator in which Terry Klein was working through the moment when the Defendant shot Terry Klein with a firearm.
>
> B.    **MSP Commitment, Partially Suspended.**  The Defendant shall be committed to the Montana State Prison for a term of 100 years with 30 years thereof suspended on conditions hereinafter set forth.

(*Id.* at 2.)

On July 14, 2017, Hansen pleaded guilty to Deliberate Homicide.  (Doc. 37-9 at 5.)  During his change of plea hearing, Hansen testified under oath as follows:

> Q.    Mr. Hansen, is it accurate to say that on August 24th of 2016, at approximately 9:00 in the morning, you purposefully and knowingly caused the death of Terry Klein.

A.     Yes, that's accurate.

. . .

Q.     Mr. Hansen, so you remember the morning of August 24, 2016?

A.     I, vaguely yes, I remember.

Q.     And you recall having been on a construction site in the location described previously?

A.     Yes.

Q.     And you had been talking to a number of the people who were equipment operators that day, correct?

A.     Right. I was kind of bouncing around. I don't know if I was talking a bunch or what was going on really.

Q.     You didn't know any of those, the names of any of those individuals when you were talking to them?

A.     No, I didn't.

Q.     So, would you please, so after you had finished speaking with them, then you approached the excavator where Terry Klein, that Terry Klein was operating, correct?

A.     Correct, yes.

Q.     So, explain to us what happened as you approached that excavator.

A.     I walked down a hill there on where they were cutting bank off or something.  It's a little fuzzy, I wasn't in my right mind obviously.  Um, I made eye contact with him so that I wouldn't get pinched or whatever.

Q.     What do you mean by pinched?

A.        There's pinch points in heavy machinery like that.  You don't want to end up in the wrong spot or you'll end up in pieces or you just, you gotta make sure they see you or it's dangerous to be around.  So, I made sure that we made eye contact and I was, I was short of breath, he could see that.  So I was kind of catching my breath and I didn't realize it was Terry Klein.  Really, I was thinking it was somebody totally different and I don't remember any words being exchanged.  I don't recall getting on the machine, I just, I remember I was looking up at him and could he see I was, needed to catch my breath and I cocked my handgun and shot him in the head.  I don't believe he ever saw it coming, it was not provoked in any way.  It's horrible.

. . .

THE COURT:        Did Mr. Klein threaten you at all?

MR. HANSEN:       I don't recall him ever saying anything to me, Your Honor.

THE COURT:        Okay.  So, you didn't . . .

MR. HANSEN:       He didn't deserve it.

THE COURT:        Go ahead, I'm sorry.

MR. HANSEN:       He didn't deserve it.  I'm so sorry.

(Doc. 37-9 at 6-9.)

Hansen was sentenced to the Montana State Prison for a period of 100 years, with no time suspended.  (Doc. 37-10 at 54.)

At the time of the shooting, Hansen was insured under a Renters Policy, Policy No. 26-BV-9182-6 ("Policy"), effective April 13, 2016 to April 13, 2017, with a personal liability policy limit of $100,000.

The Policy provided Personal Liability coverage as follows:

## SECTION II – LIABILITY COVERAGES

## COVERAGE L – PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1.  pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2.  provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

(Doc. 37-3 at 19.)

The Policy provided the following relevant definition:

7.  "**occurrence**", when used in Section II of this policy, means an accident, including exposure to conditions, which first results in:
    a.  bodily injury; or
    b.  property damage;

    during the policy period.  All **bodily injury** and **property damage** resulting from one accident, series of related accidents or from continuous and repeated exposure to the same general conditions is considered to be one **occurrence**.

(*Id.* at 29.)

/ / /

/ / /

The Policy also contained the following exclusion:

## SECTION II – EXCLUSIONS

1.      Coverage L and Coverage M do not apply to:

    a. **bodily injury** or **property damage**:

        (1) which is either expected or intended by the **insured**; or

        (2) which is the result of willful and malicious acts of the **insured**[.]

(*Id.* at 20.)

Hansen tendered to State Farm the defense and indemnification of the Complaint in the Underlying Action.  State Farm determined the Policy did not provide coverage for the allegations against Hansen, but agreed to provide a defense, subject to a full reservation of rights.

On May 12, 2020, State Farm filed this action seeking a declaration that no coverage exists under the Policy for the claims asserted against Hansen in the Underlying Action.  (Doc. 1.)

## II.      DISCUSSION

State Farm now moves for summary judgment on the grounds that the claims in the Underlying Complaint arise entirely out of allegations of intentional conduct by Hansen, and as a result do not constitute a covered "occurrence" under the Policy, and/or are excluded because the alleged bodily injury was either expected or intended by Hansen or was the result of willful and malicious acts of

Hansen.  State Farm therefore seeks a declaration that it has no duty to defend or indemnify Hansen.  Hansen has filed a cross motion for summary judgment, arguing that the factual allegations in the Underlying Complaint leave open the possibility that he did not objectively intend or expect to damage Klein, and therefore, State Farm cannot unequivocally demonstrate that there is no possibility of coverage.  Thus, Hansen asserts State Farm is required to defend him in the Underlying Action.

### A.    Legal Standards

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  *Id.* at 323.  The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *Id.* at 322-23.  If the moving party meets its initial responsibility, the burden then shifts to the opposing

11

party to establish that a genuine issue as to any material fact actually does exist.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In ruling on a motion for summary judgment, the Court must view all inferences

drawn from the underlying facts in the light most favorable to the non-moving

party. *Id.* at 587.

### B.    Duty to Defend

The Court's jurisdiction over this action is based on diversity of citizenship.

Thus, the Court must apply the substantive law of Montana.  *Medical Laboratory*

*Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812

(9th Cir. 2002).  In Montana, the interpretation of an insurance contract is a

question of law.  *Scentry Biologicals, Inc. v. Mid-continent Cas. Co.*, 319 P.3d

1260, 1264 (2014).

It is well-settled in Montana that an insurer's duty to defend is independent

from and broader than its duty to indemnify.  *Farmers Union Mut. Ins. Co. v.*

*Staples*, 90 P.3d 381, 385 (Mont. 2004).  The "duty to defend arises when a

complaint against an insured alleges facts, which if proved, would result in

coverage." *Tidyman's Mgmt. Services, Inc. v. Davis*, 330 P.3d 1139, 1149 (Mont.

2014) citing *Staples*, 90 P.3d at 385 (Mont. 2004); *State Farm Mut. Auto. Ins. Co.*

*v. Freyer*, 312 P.3d 403, 410-11 (Mont. 2013).  Whereas the duty to indemnify

"arises only if coverage under the policy is actually established." *Freyer*, 312 P.3d at 410-11.

The determination of whether an insurer has a duty to defend is made by comparing the factual allegations in the complaint to the coverage afforded under the policy. *Graber v. State Farm Fire & Cas. Co.*, 797 P.2d 214, 217 (Mont. 1990); *Staples*, 90 P.3d at 385. In comparing allegations of liability with policy language, "a court must liberally construe allegations in a complaint so that all doubts about the meaning of the allegations are resolved in favor of finding that the obligation to defend was activated." *Staples*, 90 P.3d at 385. The "fundamental protective purpose of an insurance policy," paired with the insurer's obligation to provide a defense, require coverage exclusions to be narrowly construed. *Id*. Therefore, the insurer must "construe the factual assertions from the perspective of the insured." *Id.* "Where a claim falls unequivocally outside the policy's coverage, however, there is nothing for the court to construe, and no reason to impose a duty to defend." *Twite Fam. P'ship v. Unitrin Multi Line Ins.*, 192 P.3d 1156, 1160 (Mont. 2008). Accordingly, the insurer has a duty to defend unless there is an "unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage." *Staples*, 90 P.3d at 385.

When evaluating the duty to defend, insurers are free to evaluate facts beyond the allegations in the complaint and may deny the duty to defend based on

13

the learned facts. *Staples*, 90 P.3d at 385; *Revelation Indus., Inc.*, 206 P.3d at 926. But insurers "do so at their own risk as they will be required to defend and/or indemnify based on the information discovered." *Revelation Indus., Inc.*, 206 P.3d at 926. Where there is any dispute as to the facts relevant to coverage, the dispute must be resolved in favor of finding a duty to defend. *Staples*, 90 P.3d at 386.

   a. <u>Whether the Allegations in the Underlying Complaint<br>Constitute an "Occurrence" Triggering the Duty to Defend</u>

Hansen bears the burden of proving the allegations in the Underlying Action constitute an "occurrence" within the Policy's initial grant of coverage. *Travelers Cas. & Sur. Co. v. Ribi Immunochem Rsch., Inc.*, 108 P.3d 469, 476 (Mont. 2005). The Policy defines "occurrence" as "an accident, including exposure to conditions, which first results in . . . bodily injury; or . . . property damage[.]" (Doc. 37-3 at 29.) Montana law defines "accident" as an "unexpected happening that occurs without intention or design on the part of the insured." *Safeco Ins. Co. of America v. Liss*, 16 P.3d 399, 405 (Mont. 2000). The Montana Supreme Court has clarified that an accident may include intentional acts so long as the harmful consequences of those acts were not objectively intended or expected from the standpoint of the insured. *Employers Mut. Cas. Co. v. Fisher Builders, Inc.*, 371 P.3d 375, 378-80 (Mont. 2016).

Under *Fisher*, the following two part test is used to determine whether the conduct in question was an accident, and thereby constitutes an "occurrence": "1)

14

whether the act itself was intentional, and 2) if so, whether the consequence or resulting harm stemming from the act was intended or expected from the actor's standpoint." *Fisher*, 371 P.3d at 378.   If the answer to either question is no, then the act is an "occurrence." *Id.*   The question under the second prong is an objective inquiry. *Id.* at 379.   That is, whether a reasonable person in the insured's position could objectively expect their actions to cause harm. *Id.*

Here, the Underlying Complaint, alleges "[o]n August 24, 2016, contrary to the standard of care imposed upon citizens of the state of Montana, Defendant Raymond Hansen did, without provocation, license, or defense, shoot and kill Terry Klein, Sr., in Richland County, State of Montana." (Doc. 30-1 at 4.)  Hansen focuses on the phrase "contrary to the standard of care" and argues the claim is based on negligent, not intentional acts.  State Farm, on the other hand, focuses on the phrase, "without provocation, license, or defense" and argues the only reasonable reading of the allegations is that Hansen intended to kill Klein.

The Court disagrees that the words "without provocation, license or defense" necessarily mean with purpose, intent, malice or willfulness.  It is conceivable that a person could accidentally shoot another without being provoked, and without license or defense.  Indeed, "'accidents' that result from the unsafe use or mishandling of firearms are an all too frequent 'occurrence' in this State[.]" *Safeco Ins. Co. of Am. v. Liss*, 16 P.3d 399, 406 (Mont. 2000).  Thus, resolving all

15

doubt about the meaning of the allegations in the Underlying Complaint from the perspective of the insured, it might appear the obligation to defend was activated.

Here, however, the Court is not limited to considering only the allegations within the four corners of the Underlying Complaint, because State Farm opted to consider extrinsic evidence, specifically the record from the Criminal Case, in its coverage determination.[2] *Staples*, 90 P.3d at 385; *Revelation Indus., Inc.*, 206 P.3d at 926.

State Farm argues Hansen is both judicially estopped and collaterally estopped[3] from arguing his actions in killing Klein were not purposeful or knowing

---

[2] Hansen argues State Farm intentionally ignored information from the Criminal Case bearing on Hansen's mental capacity to form intent in order to deny coverage. State Farm asserts that it reviewed the publicly available documents from the Criminal Case, including the transcript from Hansen's change of plea hearing, and that it did not see copies of any mental health evaluations until discovery in this case. The public docket from the Criminal Case shows several entries mentioning Hansen's mental capacity. (Doc. 54-1 at 2.) Thus, at a minimum, State Farm knew or should have known Hansen's mental capacity was raised in the Criminal Case.

[3] Although seemingly applicable, collateral estoppel may not apply in this case. In determining the preclusive effect of a state court judgment, the court must apply the forum state's law. *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 482 (1982). Under Montana law, collateral estoppel applies where: "(1) the issue decided in the prior adjudication is identical with the one presented in the action in question; (2) there was a final judgment on the merits; and (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication." *Safeco Ins. Co. of Am. v. Liss*, 16 P.3d 399, 407 (Mont. 2000). The Montana Supreme Court has held collateral estoppel may apply if an insured is has been convicted after a trial. *See Aetna Life and Cas. Ins. Co. v. Johnson*, 673 P.2d 1277, 1280 (Mont. 1984) (holding collateral estoppel barred relitigation of the issue of whether

based on the admissions he made at the change of plea hearing.  State Farm further

argues, that even if there is no estoppel, the shooting was a "per se" intentional act.

In response, Hansen argues neither collateral estoppel nor judicial estoppel apply

to his guilty plea.  Hansen further contends there are genuine issues of material fact

regarding his intent and mental capacity to form intent, and therefore State Farm

cannot unequivocally demonstrate there is no possibility of coverage.

     b.    <u>Judicial Estoppel</u>

"Judicial estoppel is an equitable doctrine, invoked by a court at its own

discretion, and driven by the specific facts of a case." *Bloxham v. Mountain W.*

*Farm Bureau Mut. Ins. Co.*, 43 F.Supp.2d 1121, 1128 (D. Mont. 1999).  Federal

law governs the application of judicial estoppel in federal court.  *Rissetto v.*

*Plumbers & Steamfitters Loc. 343*, 94 F.3d 597, 603 (9th Cir. 1996).  The purpose

---

the insured intentionally set fire to his business premises because he had been
convicted of arson by a jury).  But the Montana Supreme Court has not extended
collateral estoppel to guilty pleas.  In *Liss*, the Court explained "a guilty plea as a
matter of law fails the second prong of the three-part test, because a guilty plea
does not constitute a judgment on the merits."  16 P.3d at 407.  *See also*
*Northwestern Nat'l Cas. Co. v. Phalen*, 597 P.2d 720, 727 (Mont. 1979) (finding
insured's "plea of guilty to felony assault is not conclusive either as to his policy
coverage or the duty of [the insurer] to defend him in a tort action."); *In re Estate*
*of Swanson*, 187 P.3d 631, 635 (Mont. 2008) (clarifying that *Liss* is not limited to
cases involving *nolo contendere* pleas).  Nevertheless, State Farm argues collateral
estoppel applies here because Hanson not only pled guilty, but also made
additional admissions regarding his intent in explaining why he was guilty.
Because of the Court's decision on the application of judicial estoppel, however,
the Court need not determine the application of collateral estoppel here.

of judicial estoppel is to "protect the integrity of the judicial process" and prevent litigants "from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine,* 532 U.S. 742, 749-50 (2001).  Judicial estoppel is flexible, fact-specific, and "may apply in a particular case 'where neither collateral estoppel nor equitable estoppel . . . would apply.'" *Lowery v. Stovall*, 92 F.3d 219, 223 n.3 (4th Cir. 1996).  Federal courts have applied judicial estoppel to preclude a party in a civil lawsuit from asserting facts inconsistent with the facts to which the party admitted during a plea colloquy in a prior criminal proceeding.  *See e.g. Bradford v. Wiggins*, 516 F.3d 1189 (10th Cir. 2008); *Lowery*, 92 F.3d at 224-25.[4]

Three non-exhaustive factors are generally considered in determining whether judicial estoppel applies.  *New Hampshire v. Maine,* 532 U.S. at 750-51.  They are: (1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether the party persuaded a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in the later

---

[4] The Court notes these cases are distinguishable from *Bloxham v. Mountain W. Farm Bureau Mut. Ins. Co.*, 43 F.Supp.2d 1121 (D. Mont. 1999).  In *Bradford* and *Lowery*, the judicially estopped parties had made specific factual admissions of guilt.  *Bradford*, 516 F.3d at 1195; *Lowery*, 92 F.2d at 224.  Whereas, in *Bloxham*, the insured had admitted only that there was probable cause for his arrest, but consistently denied the intentionality of his acts.  *Bloxham*, 43 F.Supp.2d at 111223-24.  Here, Hansen made specific factual admissions in the Criminal Case.  Therefore, this case is more analogous to *Bradford* and *Lowery* than *Bloxham*.

proceeding would create "the perception that either the first or the second court was misled"; and (3) whether the party would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* The Ninth Circuit "follow[s] th[e] blueprint" the Supreme Court established in *New Hampshire*. *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.,* 555 F.3d 772, 779 (9th Cir. 2009).

This case satisfies this three part test. First, Hansen's present position is contradictory to the position he took when he pled guilty. During the change of plea hearing, Hansen admitted under oath, that he "purposefully and knowingly caused the death of Terry Klein." (Doc. 37-9 at 6.) Now, in contrast, Hansen claims he "did not intentionally, purposefully, or knowingly shoot Terry Klein, Sr." (Doc. 47 at ¶ 39.) These claims are clearly inconsistent.

Second, Hansen succeeded in persuading the court to accept his position on intent in the Criminal Case. "[J]udicial acceptance means only that the first court has adopted the position urged by the party . . . as part of a final disposition." *Lowery*, 92 F.3d at 224 citing *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 n.5 (6th Cir. 1982). Before accepting Hansen's guilty plea, the state court trial judge was required to determine there was a factual basis for the plea. Mont. Code Ann. § 46-12-212. The record demonstrates that the trial judge made that finding, and accepted Hansen's statement that he purposefully or knowingly caused the

death of another person, as required to be guilty of deliberate homicide under

Mont. Code Ann. § 45-5-102(1)(a).  (Doc. 37-9 at 6, 24.)

While under oath, Hansen answered affirmatively that he "purposefully and

knowingly caused the death of Terry Klein."  (Doc. 37-9 at 6.)  Further, as part of

his plea agreement, Hansen agreed to explain why he shot Klein.  (Doc. 37-8 at 2.)

When asked what happened, Hansen stated under oath:

> I remember I was looking up at him and could he see I was, needed to
> catch my breath and I cocked my handgun and shot him in the head.  I
> don't believe he ever saw it coming, it was not provoked in any way.

(Doc. 37-9 at 8-9.)

The trial court stated, "[b]ased on the Defendant's testimony, the

representations of the County Attorney's Office, the Court will accept the

Defendant's plea of guilty to Deliberate Homicide, a felony."  (Doc. 37-9 at 24.)

Further, at Hansen's sentencing hearing, the trial court stated:

> The Court has to consider your explanation of what happened and
> you indicated to the probation officer, 'I was very confused. Going
> through a crazy spell.  I thought I was expected to do this and I shot
> an innocent man in the head'.  There was no rational reason to
> commit this act.
>
> And so there's no confusion, the Court does not consider the drug
> usage any excuse, at all, nor does the law consider it an excuse and
> specifically provides that voluntary intoxication by drugs or alcohol
> is not a defense.  It provides an explanation maybe, but nobody is
> claiming it's an excuse or a defense.

(Doc. 37-10 at 51.)

20

Thus, the state court was persuaded to accept Hansen's admissions on intent, in spite of the issues that had been raised concerning Hansen's mental capacity earlier in the case.  Further, because Hansen convinced the state court that he purposefully and knowingly killed Klein, his attempt to now refute his admission in federal court, would, if successful, create a perception that either the state court or this Court has been misled.  The Court, therefore, finds the second requirement for judicial estoppel is satisfied.

Third, it would provide Hansen an unfair advantage to allow him to contradict his earlier admissions.  "[A] party who accepts the benefit of a [] plea and then makes inconsistent statements in a subsequent [] action would derive an unfair advantage if not estopped from pursuing those claims." *Bradford*, 516 F.3d at 1195.  Here, Hansen struck a deal with the prosecution that in exchange for his guilty plea – including a statement explaining what happened between himself and Klein – the State would recommend a lower sentence.  (Doc. 37-8.)  Hansen carried out his part of the deal, as did the State, by recommending that 30 years of his sentence be suspended.  (Doc. 37-10 at 45.)  Thus, Hansen gained the advantage for which he bargained.  The fact the state court judge ultimately did not accept the State's recommendation is immaterial.  Hansen was aware that the plea agreement was not binding on the court, and that the court may not accept the

State's recommendation.  (Doc. 37-9 at 4.)  Yet, he made the admissions anyway, to obtain the benefit of the State's sentencing recommendation.

Moreover, permitting Hanson to disavow his prior position would impose an unfair detriment on State Farm.  It would be required to defend a claim arising from a deliberate homicide which is plainly not covered under Hanson's previous admissions.  The third requirement for judicial estoppel is, therefore, satisfied.

Finally, in *New Hampshire*, the Supreme Court indicated judicial estoppel might not be appropriate when a party's prior position was based on inadvertence or mistake.  *New Hampshire,* 532 U.S. at 753.  But where the party had "the opportunity or incentive" to discover the basis of the later inconsistent position at the time the initial position was taken, the party's switch in positions will not be excused.  *Id.* at 754.  Here, Hansen raised the defense of mental disease or defect, and had Dr. Woolston's report, prior to the change of plea hearing.  Thus, he had the means and opportunity to assert that he lacked the intent to purposefully or knowingly kill Klein at the time he plead guilty.  Hansen apparently chose to abandon that defense and admit under oath that he had the intent required to commit deliberate homicide in an attempt to obtain a reduced sentence.  Thus, the Court does not find Hansen's change in position can be fairly regarded as inadvertence or mistake.

The person who knows best if he acted intentionally is Hansen, and Hansen admitted under oath that he purposefully and knowingly killed Klein, when it appeared to his advantage to so admit. Having affirmed under oath one particular set of facts, Hansen is judicially estopped from now asserting a contrary position.

Because Hansen is judicially estopped from contradicting his earlier sworn admissions that the purposefully or knowingly killed Klein, the Court finds the shooting was not an "accident," and thus there was no "occurrence" triggering coverage under the Policy. As a result, State Farm has unequivocally demonstrated that the claim asserted against Hansen in the Underlying Action does not fall within the Policy's coverage. State Farm, therefore, has no duty to defend.[5]

### C.    Duty to Indemnify

Having determined State Farm has no duty to defend, the Court likewise finds State Farm has no duty to indemnify. Generally, "courts must caution against determining questions of indemnity until liability is established in the underlying proceeding." *Am. Reliable Ins. Co. v. Vlieland*, 2018 WL 1582551, *3 (D. Mont. March 30, 2018). Typically, a claim for declaratory judgment regarding an

---

[5] In light of the Court's determination that there is no coverage under the Policy, the Court need not reach the applicability of the Expected or Intended Injury Exclusion or the Willful and Malicious Acts Exclusion.

insurer's duty to indemnify is not ripe until there has been a resolution of the underlying claim. *Id.* at \*3 (finding insurer's motion for summary judgment was "not ripe and justiciable regarding its duty to indemnify" because the underlying state court matter was unresolved); *Nat'l Surety Corp. v. Mack*, 2016 WL 590453, \*2 (D. Mont. Feb. 11, 2016) ("Courts must refrain from deciding questions of indemnity until liability is established in the underlying proceeding."); *Yellowstone Dev., LLC v. United Fire & Cas. Co.*, 2011 WL 13077970, \*2 (D. Mont. Aug. 11, 2011) (finding claim for declaratory judgment concerning insurer's duty to indemnify was not ripe where the underlying claim remained pending); *Skinner v. Allstate Ins. Co.*, 127 P.3d 359, 363 (Mont. 2005).

Nevertheless, because the duty to defend is more extensive than the duty to indemnify, it is possible for the issue of the duty to defend to resolve a premature indemnity issue. The Montana Supreme Court has noted that "[w]here there is no duty to defend, it follows that there can be no duty to indemnify." *Skinner*, 127 P.3d at 364. Thus, "a finding that there is no duty to defend necessarily compels the finding that there is no duty to indemnify." *Mack*, 2016 WL 590453 at \*2. The Montana Supreme Court reaffirmed this rule in *Farmers Ins. Exch. v. Wessel*, 477 P.3d 1101, 1106-07 (Mont. 2020). There, the district court had found the insurer had no duty to defend but stated the duty to indemnify was not ripe because liability had not yet been determined in the underlying action. *Id.* at 1106. The

24

Supreme Court reversed, stating that "[a] conclusion that there is no duty to defend compels the conclusion that there is no duty to indemnify." *Id.* at 1107.

Accordingly, because State Farm has no duty to defend, it likewise has no duty to indemnify.

## III.  CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1.    Hansen's Motion for Summary Judgment on Duty to Defend (Doc. 28) is **DENIED**;

2.    State Farm's Motion for Summary Judgment (Doc. 31) is **GRANTED**; and

3.    State Farm's Motion in Limine to Exclude Expert Testimony (Doc. 39)  is **DENIED as moot** in light of the Court's determination that Hansen is judicially estopped from contradicting his sworn statements that he purposefully or knowingly killed Klein.

DATED this 21st day of March, 2022.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge